In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2782

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BURUJI KASHAMU,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:94-cr-00172-15—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED MAY 2, 2011—DECIDED SEPTEMBER 1, 2011

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal requires us to con-
sider the collateral estoppel effect, if any, of findings
made by foreign courts in extradition proceedings. Back
in May 1998 defendant Kashamu was one of fourteen
persons charged in an indictment returned by a federal
grand jury in Chicago with conspiracy to import and
distribute heroin in violation of 21 U.S.C. § 963. He was
indicted both in his own name and under what the gov-

ernment believed to be two aliases that he used: "Alaji" and "Kasmal." But he could not be found. He had not been arrested; he did not jump bail; his whereabouts simply were unknown. The government did not ask that he be tried in absentia. The case proceeded against the other defendants (except for one who like Kashamu could not be found), and all of them were convicted.

In December 1998 Kashamu surfaced in England and was arrested at our government's request. Justice Department lawyers, working with their English counterparts, sought his extradition to the United States to stand trial. For reasons irrelevant to this appeal, extradition proceedings were incredibly protracted, ending finally in January 2003 when the presiding judge (a "district judge," though more like a U.S. magistrate judge than a U.S. district judge, cf. S.H. Bailey et al., *Smith, Bailey & Gunn on the Modern English Legal System* §§ 2-021, 4-013, pp. 65, 233 (4th ed. 2002), and often referred to as a magistrate, as we will refer to him in this opinion) decided not to order him extradited. A Nigerian citizen, he left England and is believed to be back in Nigeria.

In February 2009 he filed a motion in the district court in Chicago to dismiss the indictment against him on the ground that the English magistrate had found that he was not "Alaji" and the finding should be given collateral estoppel effect in the criminal proceeding and that if this was done he could not be convicted and therefore shouldn't have to stand trial. The district judge denied the motion, precipitating this appeal.

The government argues that we have no jurisdiction because a finding made in an extradition proceeding

can never be given collateral estoppel effect and so clear is this that Kashamu's challenge to the denial of his motion to dismiss the indictment should not be deemed even "colorable." An appeal that is not colorable—that is frivolous—should simply be dismissed.

The challenge to the indictment may be sound or unsound, but, as we're about to see, it's not frivolous. And although the order appealed from—the denial of a motion to dismiss an indictment on collateral estoppel grounds—is not a final order (the criminal proceeding initiated by the indictment remains pending in the district court), it is appealable under the collateral order doctrine. Kashamu is asserting a right not just not to be convicted, but not to be tried, and such a right would be lost forever if review were postponed until final judgment. See *Abney v. United States*, 431 U.S. 651, 658-60 (1977); *United States v. Patterson*, 782 F.2d 68, 72 n. 7 (7th Cir. 1986).

Normally, it is true, the denial of a motion to dismiss an indictment cannot be appealed immediately if the ground of the motion can be reasserted if and when the defendant is convicted, as in such cases as *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799-800 (1989); *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265-67 (1982) (per curiam), and *United States v. MacDonald*, 435 U.S. 850, 855-57 (1978). But there is an exception when the ground is double jeopardy, as held in *Abney* and noted in the other cases we just cited, because the double jeopardy clause protects a defendant against being retried, and not just against being convicted—and the double jeopardy clause has been held to incorporate

the doctrine of collateral estoppel. *Yeager v. United States*, 129 S. Ct. 2360, 2366-67 (2009); *Dowling v. United States*, 493 U.S. 342, 347 (1990); *Ashe v. Swenson*, 397 U.S. 436, 445-46 (1970); *United States v. Patterson, supra*, 782 F.2d at 72 n. 7.

As long as the indictment against Kashamu remains pending, the government can seek to extradite him from any country that has an extradition treaty with the United States—including the United Kingdom, despite the denial of the previous request for extradition, and, of more immediate moment, Nigeria, which has an extradition treaty with the United States by virtue of the Extradition Treaty between the United States of America and Great Britain, Dec. 22, 1931, 47 Stat. 2122. For article 16, 47 Stat. 2126, extends the treaty (which is applicable to drug offenses, see art. 3(24), 47 Stat. 2112) to British protectorates, as Nigeria once was; and after becoming independent Nigeria continued the treaty in force. Congressional Research Service, "Extradition to and from the United States: Overview of the Law and Recent Treaties," p. 39 (2010), www.fas.org/sgp/crs/misc/ 98-958.pdf (visited Aug. 29, 2011); see United Nations, "Succession of States in Respect of Bilateral Treaties: Study Prepared by the Secretariat," 2 *Yearbook of the International Law Commission, 1970,* pp. 102, 113 (1972), http://untreaty.un.org/ilc/publications/yearbooks/ Ybkvolumes%28e%29/ILC_1970_v2_e.pdf (visited Aug. 29, 2011). If the United States succeeds in extraditing Kashamu it will put him on trial, and even if he is acquitted he will have lost a right that he claims the collateral estoppel doctrine gives him.

There is an analogy to the right to appeal, under the collateral order doctrine, a denial of a motion made before trial to dismiss a suit on grounds of official immunity. Such a denial is an interlocutory order. But the immunity is to the burdens of suit and not just to an award of damages, and those burdens would not be avoided if the defendant had to wait to challenge the denial of immunity until a final judgment against him was entered. *Mitchell v. Forsyth*, 472 U.S. 511, 525-30 (1985); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989).

We haven't been told whether our government has yet tried to extradite Kashamu from Nigeria. And we don't know what weight another country would give the U.K.'s decision not to extradite him. (Nigeria might give it conclusive weight—or might not—but in either event he may not want to remain in Nigeria.) All that matters is that if his defense of collateral estoppel is sound, it not only is a defense to the criminal charge against him but also protects him from extradition, the immediate sequel to which would be a criminal trial.

So we have appellate jurisdiction and turn to the question whether it is true as the government argues that a ruling rejecting a request for extradition can never have collateral estoppel effect. Ordinarily the preclusive effect of a judicial order is determined under the law of the jurisdiction that issued the order, but that is by virtue of the Constitution's full faith and credit clause and its implementing statute. 28 U.S.C. § 1738; see *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 80-81 (1984); *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 n. 3 (7th Cir. 2011). When the order is issued by

a foreign court, a domestic court is not bound by the full faith and credit clause or statute to comply with the foreign jurisdiction's preclusion rules.

So what should the domestic court (in this case the federal district court in Chicago) do? There is no consensus. Robert C. Casad, "Issue Preclusion and Foreign Country Judgments: Whose Law?," 70 *Iowa L. Rev.* 53, 56-57 (1984); see, e.g., *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 32-33 (D.D.C. 2007); *Alfadda v. Fenn*, 966 F. Supp. 1317, 1328-30 (S.D.N.Y. 1997); *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 742 (N.Y. 1970); *Restatement (Third) of Foreign Relations Law* § 481 comment c (1987); *Restatement (Second) of Conflict of Laws* § 98 comment f (1971); 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4473, pp. 398-411 (2d ed. 2002); Arthur T. von Mehren & Donald T. Trautman, "Recognition of Foreign Adjudications: A Survey and a Suggested Approach," 81 *Harv. L. Rev.* 1601, 1677-81 (1968); Hans Smit, "International Res Judicata and Collateral Estoppel in the United States," 9 *UCLA L. Rev.* 44, 61-64 (1962). But several cases suggest, sensibly in our view, that the U.S. court should generally give preclusive effect to the foreign court's finding as a matter of comity. E.g., *Diorinou v. Mezitis*, 237 F.3d 133, 140, 142 (2d Cir. 2001); *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1148-49 (5th Cir. 1990); see also *Hilton v. Guyot*, 159 U.S. 113, 205-06 (1895).

Comity is a doctrine of deference based on respect for the judicial decisions of foreign sovereigns (or of U.S. states, which are quasi-sovereigns). When the foreign

judiciary is respected, as in the case of the United King-dom's judiciary, and the rule on which the finding sought to be given preclusive effect is based doesn't offend a strong U.S. policy, the federal courts should defer to that finding. Cf. *Griffin v. McCoach*, 313 U.S. 498, 506-07 (1941); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 846-47 (7th Cir. 1999); *Loucks v. Standard Oil Co.*, 120 N.E. 198, 201-02 (N.Y. 1918) (Cardozo, J.) ("we are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home"). This suggests that the district court should have applied the United Kingdom's concept of collateral estoppel in deciding what weight to give the ruling of the English magistrate, provided that concept does not offend U.S. policy. But we are not sure the suggestion is correct, given the peculiarity of this case. The English judiciary had and has very little interest—maybe no interest—in it. Our government asked England to extradite a Nigerian who does not, and doubtless has no right to, reside in England. It would hardly matter to England whether Kashamu is tried in the United States.

But set that point to one side and assume that we should apply the English doctrine of collateral estoppel to this case. The English doctrine (which the English call "issue estoppel") is similar to the American, but there are differences. One is that it cannot be used against a nonparty to the case in which the determination sought to be used as an estoppel was rendered. See, e.g., *Regina v. Hartington Middle Quarter*, 4 E&B 780, 794-95, 119 Eng. Rep. 288, 293-94 (Q.B. 1855); Peter R. Barnett, *Res Judicata, Estoppel, and Foreign Judgments* 11-20, 133-37

(2001); Casad, *supra*, at 62-63. A second and critical one is that English law does not apply the doctrine to criminal cases. *Regina v. Humphrys*, 1977 A.C. 1, 21 (H.L.); K.R. Handley, *Spencer Bower & Handley: Res Judicata* § 8.38, p. 123 (4th ed. 2009). It is true that the *Humphrys* case involved a verdict, rather than a judge's ruling in a nontrial setting. A jury (or a judge in a bench trial) might resolve an issue favorably to a criminal defendant because it was left in doubt whether the particular point against him had been proved, and such a determination would be a flimsy basis for using it to preclude future charges. *Regina v. Humphrys, supra,* 1977 A.C. at 43-44. But the treatise we cited doesn't distinguish between particular types of ruling; it is emphatic that "issue estoppels are not recognized in criminal cases." Handley, *supra,* at § 8.38, p. 123.

The English further insist that the ruling sought to be given preclusive effect be final. *Carl Zeiss Stiftung v. Rayner & Keeler Ltd. (No. 2),* 1 A.C. 853, 918 (H.L. 1966); *Nouvion v. Freeman,* 15 App. Cas. 1, 8-9 (H.L. 1889); Barnett, *supra,* at 16-17; Handley, *supra,* § 5.01, p. 65. The English judges have intimated that their determinations in Kashamu's extradition hearings (there were two hearings) were not final. In a 2001 opinion remanding the matter to the magistrate, the High Court of Justice noted that "extradition proceedings do not, nor does fairness require that they should, involve resolution of trial issues. Self-evidently, extradition contemplates trial in another jurisdiction according to the law there. It is there that questions of admissibility, adequacy of evidence and fairness of the trial itself will be addressed." *Regina*

*(Kashamu) v. Governor of Brixton Prison (D.C.)*, [2001] EWHC (Admin) 980, ¶ 33, [2002] Q.B. 887, 900. Similarly, before concluding on remand that the evidence identifying Kashamu as Alaji was "so undermined as to make it incredible and valueless," the magistrate said he was "mindful . . . that this is a matter of the credibility of the identification witnesses which should essentially remain a matter for a jury." *United States v. Kashamu*, at *9-10 (Bow Street Magistrates' Court Jan. 10, 2003) (unpublished and unavailable in any reporting service, but reproduced in full in the appendix to the appellant's brief, pp. A-11 to A-20).

And an English treatise states that "if the accused is discharged by the magistrates at the end of the committal proceedings this is not the equivalent of an acquittal at trial. He or she may be charged again with the same offence, and be required to undergo committal proceedings again." S.H. Bailey et al., *supra*, § 14-071, p. 958. The treatise is talking about domestic committals, but the same standard applies to extradition proceedings—the magistrate determines whether there would be sufficient evidence to commit the defendant had the crime taken place in England. *Regina (Kashamu) v. Governor of Brixton Prison (D.C.)*, *supra*, [2002] Q.B. at 894.

So the defendant loses under English law even if an English court would recognize collateral estoppel in a criminal case. But earlier we expressed doubt whether the English rule of collateral estoppel should bind us in this unusual case. Furthermore the parties haven't mentioned the English rule. They have assumed that U.S. law,

specifically the federal common law rule of collateral estoppel (the rule applicable when the finding in question was made by a federal court), governs. Ordinarily a court will enforce the choice of law rule selected by the parties, no questions asked, unless they select a foreign law that would be too difficult for the federal court to apply; we have given the example of a stipulation to apply the Code of Hammurabi to a dispute arising from a contract. *Tomic v. Catholic Diocese*, 442 F.3d 1036, 1042 (7th Cir. 2006).

So while in the absence of agreement to apply U.S. law we might apply the foreign law of collateral estoppel in this case (the "might" reflecting the doubt we expressed earlier), we shall bow to the parties' tacit agreement and decide the case under federal common law.

In that law collateral estoppel is available to defendants in criminal cases. *Ashe v. Swenson*, *supra*, 397 U.S. at 442-44; *United States v. Oppenheimer*, 242 U.S. 85, 87-88 (1916) (Holmes, J.). But the government argues that the rule cannot apply to extradition determinations because the rejection of a request for extradition is always provisional—it is not a final order. *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981); *In re Mackin*, 668 F.2d 122, 129-30 (2d Cir. 1981) (Friendly, J.). It is like a magistrate's ruling that there isn't probable cause to hold a person whom the police have arrested; the person goes free but can be rearrested. Fed. R. Crim. P. 5.1(f). Likewise, when a request for extradition is denied, the prosecutors can renew the request (they may have obtained additional evidence), *United States ex rel. Rutz v. Levy*, 268 U.S. 390,

393 (1925); *DeSilva v. DiLeonardi*, 181 F.3d 865, 868 (7th Cir. 1999); *In re Mackin, supra*, 668 F.2d at 128; *Hooker v. Klein*, 573 F.2d 1360, 1367-68 (9th Cir. 1978); the extradition proceeding is deemed not to have placed the defendant in jeopardy. And when a person sought to be extradited has moved from the country that first denied extradition to another country, there is nothing in U.S. law to prevent our prosecutors from asking that country to extradite him—which is not to say that the country will grant the request. Nicaragua's code of criminal procedure, for example, states that if extradition is denied on the merits, a future request is barred, Código Procesal Penal de la República de Nicaragua, art. 359 (2001), though we don't know whether Nicaragua would give preclusive effect to the denial of extradition by a foreign country—and we have no idea whether Nigeria has a similar rule.

But the lack of finality of a denial of extradition is not conclusive of whether the denial should be given collateral estoppel effect. In *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961) (Friendly, J.), we read that "whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated

again." We likewise have said that "a final judgment is not an absolute requirement of collateral estoppel. Another way to put this, though it comes to the same thing, is that finality has a different meaning when the issue is appealability and when the issue is collateral estoppel, or in rare cases res judicata." *Amcast Industrial Corp. v. Detrex Corp.*, 45 F.3d 155, 159 (7th Cir. 1995); see also *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979); *Restatement (Second) of Judgments* § 13 and comments b, g (1982).

Ordinarily an attempt to give collateral estoppel effect to a finding made in a hearing on a request for extradition would be blocked because that hearing, like a preliminary hearing for an arrested person, would not have been full and fair (particularly not full), as the doctrine of collateral estoppel requires. As under the English law of domestic committals, the government could re-arrest the suspect and present additional evidence at the second preliminary hearing that would ensue. *Charlton v. Kelly*, 229 U.S. 447, 458-62 (1913); *Romeo v. Roache*, 820 F.2d 540, 543-44 (1st Cir. 1987) (per curiam); *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984); *Hooker v. Klein*, *supra*, 573 F.2d at 1368; *Snider v. Divittis*, No. 3:07-0335, 2008 WL 681058, at *3 (S.D. W. Va. Mar. 10, 2008), rev'd on other grounds under the name *Snider v. Seung Lee*, 584 F.3d 193 (4th Cir. 2009). But while extradition hearings, like preliminary hearings, are normally summary, they aren't always—they weren't in this case. *Collins v. Loisel*, 262 U.S. 426, 430 (1923) (Brandeis, J.), held that while "discharge . . . on the first petition for habeas corpus . . . does not operate as res

judicata . . . a judgment in habeas corpus proceedings discharging a prisoner held for preliminary examination may operate as res judicata . . . that he was at the time illegally in custody, and of the issues of law and fact necessarily involved in that result." This holding is authority for regarding findings made in extradition hearings as eligible to be given collateral estoppel effect, at least in special circumstances—so let us consider whether such circumstances are present in this case.

Kashamu's codefendants who had pleaded guilty had admitted their participation in the charged conspiracy and identified "Alaji" as the leader of the conspiracy. Two of them identified Kashamu as Alaji in a photographic lineup, and in the extradition proceeding the government submitted their affidavits to that effect. The government also pointed out that when arrested upon arrival in England Kashamu had been carrying approximately $230,000.

On the basis of this evidence the magistrate initially ordered him extradited. But our government had failed (apparently because of a misunderstanding of what our extradition treaty with the U.K. requires in the way of evidence relating to a request for extradition) to reveal that a photograph of him taken after his arrest had been placed in a second photo array and one of the two cooperating defendants who had identified Kashamu as Alaji on the basis of the earlier array could not identify him from the photograph. A third cooperating defendant, who had not viewed the initial photo array, also could not identify the new photograph of Kashamu

as being that of Alaji. These failures of identification, brought to the attention of the High Court of Justice when Kashamu sought habeas corpus, led that court to order Kashamu released.

But before he was released—indeed, before the court issued its opinion—our government obtained a new arrest warrant and instituted a second extradition proceeding before the same magistrate. In the new proceeding the government supplemented its evidence that Kashamu was Alaji by affidavits from two women who knew him, and who separately identified him from the second photo and also identified his voice on a recording of a phone conversation. Kashamu argued in defense of his claim of mistaken identity that he was an informant for the Nigerian drug enforcement agency, and for Interpol in another African country (Benin), and that he had a brother who looked remarkably like him—and was a drug trafficker. Kashamu submitted letters from the Nigerian agency attesting to his informant status—and our government submitted evidence from the same agency denying that he was an informant. His evidence was supplemented by oral testimony from Nigerian drug enforcement officials and an Interpol official.

The magistrate found that Kashamu did have a brother who bore a "striking resemblance" to him and that Kashamu was indeed an informant for the Nigerian drug enforcement agency and Interpol, and it was these findings that persuaded him that the identification evidence submitted by our government was "incredible

and valueless." So he ordered Kashamu released from custody. The government did not seek another arrest warrant.

Our government had not presented enough evidence to convince the English magistrate that Kashamu was Alaji, but Kashamu had not presented enough evidence to convince the magistrate that he was not Alaji. The only *findings* that the magistrate made that could possibly be entitled to collateral estoppel effect in a trial of Kashamu for participation in the drug conspiracy were that Kashamu had a brother who bore a striking resemblance to him, the brother was a member of the conspiracy that the government thinks was led by Kashamu, Kashamu had given information about the conspiracy to Interpol and Nigerian law enforcers, and contrary to what our government believed the brother had not died in 1989. These findings if admissible would bolster his defense but would not require an acquittal, and thus would not require the dismissal of the indictment. A reasonable jury might find that Kashamu had exploited the resemblance to his brother to create doubt about his (Kashamu's) being Alaji; that the brother was another conspirator but Kashamu was the leader; that maybe both were the leaders, like Roman Consuls; that maybe the brother was sole leader but Kashamu was a follower like the other defendants; and that Kashamu had given information to Interpol and the Nigerian authorities to throw them off the scent (it was not disclosed in the extradition hearing whether this information assisted the U.S. government's investigation that culminated in the indictment). In light of

these possibilities the magistrate was quite right not to find that Kashamu wasn't Alaji.

But we go further: we don't think that even the findings that the magistrate did make would have collateral estoppel effect in a trial of Kashamu. The actual ruling was that the evidence the prosecutors had presented would not have been sufficient to justify Kashamu's committal for trial had the crime of which he was accused been committed in England. The English standard for committal is whether there is "sufficient evidence to put [the] accused on trial for any indictable offense." Criminal Procedure and Investigations Act 1996, c. 25, § 47 and schedule 1, § 4. That is akin to the probable-cause standard applicable in preliminary hearings in the United States. See *Williams v. Kobel*, 789 F.2d 463, 468-69 (7th Cir. 1986). The question whether a jury would convict Kashamu in a trial in which all the evidence bearing on his guilt would be presented is different from whether a judge would find probable cause on the basis of a much scantier record to believe that he had committed the charged offense. If for example the finding that Kashamu and his brother bear a striking resemblance to each other were given collateral estoppel effect, then in a trial in the United States the prosecution would not be permitted to contest the proposition that they bear a striking resemblance to each other. But the determination that the government hadn't presented credible evidence in the extradition proceeding that Kashamu is Alaji would have no weight in such a trial because the prosecution would be entitled to put in more and different evidence, just as prosecutors

present more evidence at a trial than at a preliminary hearing.

We don't think it could be doubted that there was probable cause to commit Kashamu for trial (and for that matter probable cause to believe he's Alaji—for he may well be, and that is enough to establish probable cause). The magistrate turned what would normally have been a summary proceeding to determine probable cause into a trial of who is more likely to be Alaji, Kashamu or his brother? Suppose a judge presiding at a probable cause hearing in the United States said not only was there no probable cause to arrest the suspect but he was innocent of the crime the government has charged him with committing. The finding of innocence would have no preclusive effect because it would have been unnecessary to the ruling on probable cause—just as the magistrate's finding that Kashamu has a brother to whom he bears a striking resemblance was unnecessary to his ruling that there was insufficient evidence to warrant Kashamu's committal for the charged offenses. All that was necessary for the denial of extradition was the magistrate's determination that he had been given insufficient evidence to satisfy him that Kashamu was Alaji—not his finding that the two brothers look alike (or his other findings which we mentioned), though that finding supported his determination.

Only findings that are necessary to a court's decision (in this case as in our hypothetical case of a decision quashing an arrest) are entitled to preclusive effect. *Bobby v. Bies*, 129 S. Ct. 2145, 2152-53 (2009) (quoting *Restatement*

*(Second) of Judgments*, *supra*, § 27 and comment h); *United States v. Kimberlin*, 805 F.2d 210, 232 (7th Cir. 1986). For if they are not necessary, neither party has an incentive to challenge them in the litigation in which they are made. *Moore v. Mahone*, No. 09-3515, 2011 WL 2739771, at *1 (7th Cir. July 15, 2011); *Amoco Oil Co. v. Johnstone*, 856 F.2d 967, 969 (7th Cir. 1988); *Commercial Associates v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1097 (1st Cir. 1993); *Wickham Contracting Co. v. Board of Education*, 715 F.2d 21, 28 (2d Cir. 1983).

For all these reasons, the order of the district court denying the motion to dismiss the indictment is

AFFIRMED.